NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0153n.06

No. 25-3586

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Mar 27, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| LOGAN HOULE, | ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| MARION, OHIO POLICE DEPARTMENT, et al., | ) ) ) | |
| Defendants-Appellees. | ) ) | |
| | ) | OPINION |

Before: BOGGS, SILER, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Logan Houle attempted to flee the scene of a police investigation. An officer tackled Houle to handcuff him. During the struggle, the officer applied a chokehold, and Houle reached for the officer's gun. Officers ultimately subdued him. Houle later brought an excessive-force suit against the City of Marion, Ohio and the officers who arrested him. The district court granted summary judgment to the defendants on qualified-immunity grounds. We affirm in part and reverse in part.

I.

In May 2021, officers responded to a report that a man with a knife was threatening to kill people at an apartment. Officer Dana Jagger arrived first on the scene. She knocked on the apartment's door, and Houle opened it. Jagger told him about the emergency call and asked him to step outside so she could pat him down for weapons. Houle became agitated; he called the two women inside the apartment "bitches" and accused them of lying. Jagger then grabbed Houle's

shirt to pull him from the doorway; Houle resisted but ultimately complied. Jagger patted him down and found no weapons.

Shortly thereafter, Lieutenant Rob Musser and Officer Justin May arrived on the scene. May entered the apartment to ensure no one was hurt or hiding with a weapon; Jagger joined him. They found a kitchen knife on the counter, but nothing else seemed out of place.

Meanwhile, outside the apartment, Musser asked Houle if he had permission to be there. Houle said he did and claimed messages on his phone would prove it. He then tried to enter the apartment to retrieve his phone. Musser told him not to go inside, but Houle tried to slide past May, who was exiting out the front door.

May raised his hand to stop Houle, causing Houle to step backward. Houle then extended a hand toward May, who pushed him back again. At that point, Musser decided to detain Houle while the officers completed their investigation. As Musser removed handcuffs from his belt, however, Houle pushed past him and began to flee. He took several steps before May tackled him to the ground. Houle says May "immediately" started to "choke" him and continued to do so for two minutes and twenty-four seconds. According to May, however, his arm was around Houle's head and neck throughout the struggle, but he did not apply pressure immediately.

Musser drew his taser, and May yelled, "Give us your hands!" Houle thrashed around, swung his arms, and tried to stand, so May used his body weight to get Houle on the ground. Musser then handcuffed Houle's left hand, but Houle began flailing again. Jagger restrained his legs and yelled for him to stop.

About ninety seconds into the struggle, Musser saw Houle place his hand on the grip of May's holstered firearm. Musser shouted, "Gun, he tried to grab the gun." May then felt a hand on his weapon. At that point, according to May, he applied pressure to Houle's neck.

Musser handed his taser to Jagger, who tried to tase Houle's hand but tased Musser's instead.  May knocked Houle's hand away from the gun.  Musser then yelled, "He's trying to grab the taser, get it out of there" and instructed, "Mace again."

Houle continued to struggle; the officers tased him five times and used mace twice.  Houle complained that he could not breathe.  When the officers finally cuffed both of Houle's hands, May immediately released his hold.  Once Houle calmed down, the officers rolled him onto his side to ensure he could breathe and poured water into his maced eyes.  An ambulance thereafter transported him to the hospital.

As a result of this incident, an Ohio jury later convicted Houle of aggravated robbery— knowingly attempting to remove a deadly weapon from the person of a law enforcement officer— and obstruction of official business.  Ohio Rev. Code §§ 2911.01(B), 2921.31(A)-(B).  The state court sentenced him to 9 to 13.5 years for the robbery conviction and one year for obstruction, which an appellate court affirmed.

Houle thereafter filed this suit under 42 U.S.C. § 1983 against the City of Marion, the Marion Police Department, and Officers Jagger, Musser, and May.  He alleged, among other things, that the officers used excessive force in violation of the Fourth and Fourteenth Amendments.  The district court dismissed the claims against the Department and granted summary judgment to the remaining defendants, holding that qualified immunity applied because the record showed no constitutional violation.  The court also declined to consider Houle's proffered expert testimony.  This appeal followed.

II.

We review the court's grant of summary judgment de novo. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 251 (6th Cir. 2023).

Houle challenges the district court's determination that the officers were entitled to qualified immunity on the excessive-force claim. He addresses only May's use of force, however, and thus forfeits any argument as to the other defendants. *See Cockrun v. Berrien Cnty., Michigan*, 101 F.4th 416, 419 (6th Cir. 2024). To overcome qualified immunity, Houle must show that May's actions violated a constitutional right, and that the right was "clearly established"—meaning that the caselaw would have made clear to May "that his conduct was unlawful in the situation he confronted." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted).

Houle argues that May used excessive force by placing him in a chokehold, in violation of the Fourth Amendment. A chokehold constitutes deadly force. *Coley v. Lucas County*, 799 F.3d 530, 541 (6th Cir. 2015). An officer may use deadly force against a fleeing suspect who poses an "immediate danger to officers and members of the public in the area." *Stewart v. City of Euclid, Ohio*, 970 F.3d 667, 672 (6th Cir. 2020) (cleaned up).

Houle contends that there is a genuine dispute of material fact as to when May applied pressure on his neck. Specifically, May testified that he applied the chokehold after Houle reached for May's gun; Houle stated in an affidavit that May "choked" him "immediately" after the tackle and maintained the deadly force for at least ninety seconds prior to any activity involving May's gun. Thus, under May's account, Houle had posed an immediate danger to the officers at the time of the chokehold (by trying to take May's gun); whereas, under Houle's account, he did not. This conflict in the testimony creates a genuine issue of material fact—namely, as to whether May's use of deadly force preceded or came after Houle's attempt to take May's gun. We therefore

reverse the district court's grant of qualified immunity to May on the excessive-force claim. *See Gradisher v. City of Akron*, 794 F.3d 574, 585–86 (6th Cir. 2015).

Houle also argues that the district court improperly refused to consider the testimony of his expert witness. We review that ruling for an abuse of discretion. *Baker v. Blackhawk Mining, LLC*, 141 F.4th 760, 766 (6th Cir. 2025). There was none here: the court set an expert disclosure deadline of August 30, 2024, and Houle never provided any expert disclosures. The court thus did not abuse its discretion on this point. *See* Fed. R. Civ. P. 26(2)(B).

The district court's judgment is reversed as to May on the excessive-force claim, and affirmed in all other respects. The case is remanded for proceedings consistent with this opinion.